NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ERMINE CALICCHIO, PETITIONER, v. JERSEY CITY STOCK
YARDS COMPANY, RESPONDENT.

Decided December 16, 1938.

For the petitioner, *Milton, McNulty & Augelli.*

For the respondent, *John L. Ridley.*

\*      \*      \*      \*      \*      \*      \*

In the case *sub judice* it is alleged that decedent met with an accident arising out of and in the course of his employment and subsequently died from a disease known as pemphigus.

Respondent denies the allegations relative to the causal relationship between the accident and the subsequent developments.

Pemphigus is a term applied to a group of relapsing bullous affections sometimes associated with constitutional symptoms. The patients have an offensive penetrating odor. The bullas develop from apparently normal skin or mucous membrane and are distributed in an irregular manner. The following types are recognized—pemphigus acutus, pemphigus chronicus, pemphigus foliaceus and pemphigus vegetans. The affections comprehended by the terms pemphigus were formerly of greater number because several disease entities have been identified and otherwise classified in recent years.

*Etiology.*—The occurrence of pemphigus acutus after vaccination and in those who handle animal products suggests that this group of cases is caused by infection. The course of chronic pemphigus also points to an infection. Urbach

and Wolfram claimed that numerous successful transmissions of infection from human to animal and passage through animals made with filtrates of fluid from bullæ, blood serum and brain tissue point to an invisible, filtrable virus as the cause of the pemphigus. The blood serum of patients with pemphigus is said to contain antibodies specific to the antigen present in the blisters of patients as well as in the brains of infected animals. Dahldorf and others have not been able to duplicate their findings in either rabbits or monkeys. However, by irradiating mice prior to cerebral inoculation with blister fluid, Grace has isolated a virus that is probably the etiological agent.

Petitioner who is the widow of decedent stated that petitioner was employed by respondent for sixteen years. His employment had been regular and he seldom lost any time. He worked as a laborer in and about the respondent's plant and one day each week worked as a janitor. It was stipulated that petitioner's wages were $26.15 per week. On February 22d, 1937, he ran a rusty nail in his hand. He lost no time from work on account of same. He was treated by the company doctor. About one month or six weeks after this accident the wound healed and about fifteen or twenty days after, petitioner noticed sores on decedent's face, arms, back and chest. Same would not go away and decedent went to doctors but petitioner did not know whom. He was also treated by a dentist for his mouth. The condition persisted, decedent gradually became worse and under date of November 29th, 1937, he was admitted to the Jersey City Medical Center. He was treated at this institution until January 17th, 1938, when he died.

Decedent's son, William, also testified and corroborated the testimony of the mother relative to the blisters or blebs on petitioner's body. He testified he had been away but on his return in April he first noticed the condition of his father. He further testified as to subsequent appearance of blebs in mouth, the removal of a tooth by Dr. DeSevo, further treatment by Dr. Weinberg. On Thanksgiving Day decedent was very ill and Dr. Roberts was first called then Dr. Cohen who sent his father to Medical Center.

Dr. Rector testified for the petitioner and described the disease, its *modus operandi*, and subsequent effect.

Dr. A. T. Brennan, who specializes in dermatology, testified that pemphigus could follow an open wound such as sustained by decedent on February 22d, 1937. He further testified it was common among butchers where live or dead stock was handled.

Dr. O. Allan Rose, who treated petitioner at Jersey City Medical Center, described decedent's condition upon entering the hospital, his subsequent loss of weight, condition of body and the progress of blebs. His diagnosis of pemphigus was confirmed by his superior, Dr. Purdy.

Dr. Koppel, in anwer to a hypothetical question, testified that pemphigus would follow an abrasion or open wound.

Dr. James, a dermatologist, who testified for the respondent, was of the opinion that there was no relationship between abrasion and the pemphigus. He claims that incubation was rapid and time was a factor where trauma was the cause. Dr. Purdy, dermatologist, Jersey City Medical Center, also was of the same opinion as Dr. James.

Dr. P. S. Andreoria testified for the petitioner, describing the condition of the mouth and the appearance of the blebs.

Dr. Talty testified for respondent as to treating decedent for a puncture wound February 22d, 1937, described the wound, stated there was no pus but a watery discharge. There was no swelling and wound closed. He discharged him as cured.

I have carefully considered the facts as presented as well as the testimony of the various medical experts and treating physicians and have come to the conclusion that the wound sustained by decedent on February 22d, 1937, could be the proximate cause of the resultant pemphigus.

I am, therefore, awarding compensation in favor of the petitioner who is the only dependent.

\* \* \* \* \* \* \*

JOHN C. WEGNER,
*Referee.*